UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TYSON EMINGER,<br><br>    Plaintiff,<br><br>    v.<br><br>RON NEAL, et al.,<br><br>    Defendants. | CAUSE NO. 3:24-CV-62-PPS-JEM |

OPINION AND ORDER

Tyson Eminger, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 2.) Under 28 U.S.C. § 1915A, I must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Eminger is proceeding without counsel, I must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Eminger is an inmate at Indiana State Prison. He describes a tragic set of events occurring on January 14, 2023, when a fire broke out in cell A252 on the north

side of A cellhouse.[1] The man inside the cell began screaming, but no officers came. Mr. Eminger and other inmates also began yelling for the guards. After "what seemed like an eternity," which he estimates at approximately 20-30 or minutes, Officer Cross, Lieutenant Smith, Officer Crockett, and Sergeant Walton (first names unknown) arrived. (ECF 2 at 3.) It can be discerned from his allegations that the officers had been elsewhere conducting a "count" of inmates during this period, but he claims they "heard or should have heard" the prisoners yelling for help.

When they arrived, they were allegedly "untrained and unprepared" to address the fire. By his account, they ran around frantically trying to find a working fire extinguisher (without success) and to open the door to cell A252, but the door had warped due to the heat. He claims that all the responding officers were yelling for help from other prison staff, and Sergeant Walton was "screaming in an incoherent panic" as they tried to open the door and put out the fire. (ECF 2 at 4.) He claims that he and other inmates were demanding to be let out of their cells, but the officers continued their efforts to open the door of the cell that was on fire. One of the officers yelled for them to put on their COVID masks to protect them from the smoke. Regrettably, the inmate in cell A252 died before the fire could be put out.

After the fire was extinguished, the officers "were authorized by someone" to begin letting inmates out of their cells. (ECF 2 at 6.) Lieutenant Cain (first name

---

[1] I note that Mr. Eminger's case is one of approximately 20 cases filed in this District by inmates living in A cellhouse at the time of the fire. The complaints filed by these inmates are identical in every respect, with the exception of the caption and signature.

2

unknown) and Jacqueline Mayes[2] directed the inmates to an outdoor recreation area. Mr. Eminger told them he was suffering "severe effects from the smoke inhalation," including "difficulty breathing, severe headaches, dizziness, pain when inhaling, and painful coughing." (ECF 2 at 6-7.) He claims their only response was that he should "just go to rec." (*Id.* at 7.) Mr. Eminger and the other inmates remained in the recreation yard for approximately three hours. He repeated his requests for medical care to Officer Cross, Officer Crockett, Sergeant Walton, Lieutenant Cain, Ms. Mayes, and Lieutenant Smith while he was in the recreation yard, but was allegedly told by each of them that they would "get to my medical issue later." (*Id.* at 8.) He and the other inmates were ultimately returned to their cells without getting any medical attention.

After they returned to their cells, Dr. Chico, a mental health provider at the prison, walked through the unit to do a "mental health check." *Id.* He allegedly told Dr. Chico that he needed medical care for breathing difficulties and other symptoms of smoke inhalation, but she told him it "was not her job to offer medical/health care." (*Id.* at 9.) He claims that she did not notify anyone that he needed health care either. Over the next few days, he repeated to Officer Cross, Officer Crockett, Sergeant Walton, and Lieutenant Smith that he still needed medical care, but they allegedly took no steps to obtain care for him. He claims that to this day he suffers various physical symptoms from the fire, including shortness of breath, lower back pain "from crouching in my cell trying to get away from the smoke," headaches, and an inability to "run … distances."

---

[2] Mr. Eminger does not include her title or define her role within the prison.

3

(*Id.* at 11.) He also claims to suffer from night terrors, difficulty sleeping, and other psychological injuries from having witnessed the other inmate die in the fire. Based on these events, he seeks $1 million in compensatory damages and an award of punitive damages from each of thirteen defendants.

## Response To Fire

Mr. Eminger first alleges claims against the officers who responded to the fire: Officer Cross, Lieutenant Smith, Officer Crockett, and Sergeant Walton. Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Id.* The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" so that "a prison official's act results in the denial of the minimal civilized measure of life's necessities." *Id.* at 834. On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Id.*; *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). This is a high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to assert an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

The circumstances Mr. Eminger describes are disturbing, but his allegations that the officers were "unprepared" and acted "incompetently" in their response to the fire suggest negligence, not deliberate indifference. Although he claims there was a delay in

their arrival, I cannot plausibly infer from his allegations that they heard the inmates yelling and deliberately turned a blind eye to their safety. *See LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020) (to be deliberately indifferent prison employee "must have actual, not merely constructive" notice of the risk of harm). He states in conclusory terms that they "heard or should have heard" the inmates yelling, but "putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened . . . that might be redressed by the law" is not enough to state a claim under federal pleading standards. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

 Instead, it appears from his account that the officers were in another area attending to other duties, but when they arrived and saw what was happening they frantically attempted to free the inmate whose cell was on fire, albeit unsuccessfully. It can also be discerned from his allegations that their efforts were hampered by factors beyond their control, including the lack of working fire extinguishers and cell doors that could not properly withstand heat. He claims they should have evacuated him and the other inmates immediately, but it is clear from his allegations that each door had to be manually opened, and in those frantic moments the officers focused their efforts on getting inside the cell that was on fire. This may not have been the best approach, but "the mere failure . . . to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). He has not plausibly alleged that the officers acted with a mental state akin to criminal recklessness.

The circumstances he describes might suggest negligence, and he expressly asserts claims for negligence and negligent infliction of emotional distress under Indiana law. (ECF 2 at 19.) However, such claims trigger application of the Indiana Tort Claims Act (ITCA). IND. CODE § 34-13-3 *et seq.* The ITCA prohibits tort suits against government employees personally for conduct within the scope of their employment. *See* IND. CODE § 34-13-3-5(b); *see also Katz-Crank v. Haskett*, 843 F.3d 641, 648 (7th Cir. 2016) ("[T]he Indiana Tort Claims Act confers on public employees a broad immunity from suit for acts committed within the scope of their employment."); *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."). "If an alleged action is within the general scope of an individual's authority, it is authorized within the meaning of the Tort Claims Act, regardless of whether it was done negligently or with improper motive." *Reiner v. Dandurand*, 33 F. Supp. 3d 1018, 1033 (N.D. Ind. 2014) (cleaned up). It is clear from the complaint that these defendants were acting within the scope of their employment as correctional officers when they responded to the fire. Under state law, they are shielded from personal liability. *Ball*, 760 F.3d at 645.

### Denial of Medical Care

Mr. Eminger next asserts claims against the responding officers, as well as Lieutenant Cain, Ms. Mayes, and Dr. Chico, for denying him medical care after the fire. Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a prisoner

must allege: (1) he had an objectively seriously medical need; and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Mr. Eminger claims to have been suffering from severe effects of smoke inhalation after the fire, including difficulty breathing. He asserts that he reported his need for medical attention to each of these defendants, but they brushed off his concerns. It was not unreasonable for the officers to initially focus on evacuating and taking count of the inmates in the cellhouse, but Mr. Eminger claims that no one took any steps to have him evaluated by medical staff for days, well after the emergency was over. As for Dr. Chico, she is a mental health provider and may not have been equipped to treat injuries from smoke inhalation, but Mr. Eminger claims that instead of taking some step to assist him, such as contacting the medical unit on his behalf, she simply told him it wasn't her job. She knew there had just been a serious fire in which one inmate died, and her response could be considered deliberate indifference under these extreme circumstances. He has alleged enough to proceed further on a claim against Officer Cross, Lieutenant Smith, Officer Crockett, Sergeant Walton, Lieutenant Cain,

Ms. Mayes, and Dr. Chico for the denial of medical care in violation of the Eighth Amendment.

### **High-Ranking Officials**

Finally, he sues high-ranking officials for the circumstances leading to the fire: Commissioner Reagle, Warden Ron Neal, Assistant Warden Dawn Buss, Major Douglas Wardlow, and two unnamed defendants, the prison's safety hazard manager (herein "John Doe Safety Manager") and the prison's supervisor of fire training (herein "John Doe Fire Training Supervisor"). He argues that their actions and inaction effectively made the cells in the A cellhouse a "deathtrap." Specifically, he points to the following conditions: most of the fire extinguishers in the cellhouse were either empty or inoperable; there were few fire drills performed by staff or inmates; the cell doors had to be manually unlocked and could not withstand heat; there were no emergency call buttons inside the cells; and the cell walls contained layers and layers of paint, which provided fuel for a fire should one break out. He claims the officials were on notice of these conditions because of the more than 100 fires that had occurred at ISP prior to this one, which lead to a flurry of reports and in some cases litigation,[3] and regular dormitory meetings in which concerns about fire-readiness were routinely raised by

---

[3] Another inmate at ISP died in a fire in 2017, resulting in a lawsuit by his estate. *Devine v. Neal, et al.*, No. 3:18-CV-995-JD (N.D. Ind. closed Sept. 12, 2023.) Although that fire occurred in the B cellhouse, the presiding judge found evidence at the summary judgment stage that "fires were frequent at ISP," that "fire safety at ISP was severely deficient in multiple areas," and that inspections of fire safety equipment at the facility "were not being performed in any meaningful manner." *Id.*, ECF 234 at 28, 32. The case ultimately settled out of court before trial. *Id.*, ECF 304-307.

inmates. He further claims these officials had the ability to alter these conditions or move inmates out of that area, and yet they allegedly did nothing to protect them.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer*, 511 U.S. at 832-33. To establish an Eighth Amendment violation, an inmate must show that a defendant was deliberately indifferent to "an excessive risk" to his health or safety. *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018). Proving this requires satisfying two components: "(1) the harm to which the prisoner was exposed must be an objectively serious one; and (2) judged subjectively, the prison official must have actual, and not merely constructive, knowledge of the risk." *Id.* (cleaned up). On the second prong, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

As a preliminary matter, Mr. Eminger states that he is suing these officials in both their official and personal capacity. However, claims for damages against these officials in their official capacity are barred by the Eleventh Amendment. *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 565 (7th Cir. 2019); *see also Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018) ("[A] state official (in his official capacity) *is* the state.").

That leaves the possibility of suing them in their personal capacity. There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and these officials cannot be held liable for damages simply because they oversee operations at the prison or within

9

the IDOC. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). However, they may be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019). Additionally, "[i]ndividual defendants . . . who are responsible for setting prison policy, can be held liable for a constitutional violation if they are aware of a systematic lapse in enforcement of a policy critical to ensuring inmate safety yet fail to enforce that policy." *Sinn*, 911 F.3d at 423. Knowledge may reasonably be inferred when a condition is so pervasive that high-ranking officials were "bound to have noticed" it. *Smith v. Sangamon Cty. Sherriff's Dep't*, 715 F.3d 188, 192 (7th Cir. 2013).

Giving Mr. Eminger the inferences to which is entitled at this stage, he has plausibly alleged that the above officials were aware of the serious danger posed by fire in the A cellhouse because of the conditions and omissions he outlines, and yet they failed to take any steps to keep inmates safe. As a result, he suffered physical and emotional injuries. He has alleged enough to proceed further on a claim for damages against these officials under the Eighth Amendment.

As to the two John Doe defendants, it is permissible to sue a "placeholder defendant" in federal court, but as a practical matter an unnamed defendant cannot be served with process. *See Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022). These defendants must be identified and served within the two-year statute of limitations period and the deadline specified in Federal Rule of Civil Procedure 4(m). *Id.* I have an obligation to assist Mr. Eminger in trying to identify and serve these

10

defendants. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996); *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990). To aid in this process, I will order Warden Neal to provide identifying information about these defendants as outlined below.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Officer Cross, Lieutenant Smith, Officer Crockett, Sergeant Walton, Lieutenant Cain, Ms. Mayes, and Dr. Chico in their personal capacity for money damages for denying him medical care for injuries he suffered in a January 2023 fire in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Commissioner Reagle, Warden Ron Neal, Assistant Warden Dawn Buss, Major Douglas Wardlow, John Doe Safety Manager, and John Doe Fire Training Supervisor in their personal capacity for monetary damages for deliberate indifference to the risk of harm posed by a fire that occurred in January 2023 in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Ron Neal, Commissioner Christina Reagle, Jacqueline Mayes, Lieutenant Cain (first name unknown), Officer Crockett (first name unknown), Lieutenant Smith (first name unknown), Sergeant Walton (first name unknown), Assistant Warden Dawn Buss, and Major Douglas Wardlow at the Indiana Department of Correction and to send them a copy of this order and the complaint (ECF 2) pursuant to 28 U.S.C. § 1915(d);

11

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Chico (first name unknown) at Centurion Health and to send her a copy of this order and the complaint (ECF 2) pursuant to 28 U.S.C. § 1915(d);

(6) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(7) ORDERS Warden Neal, Commissioner Reagle, Jacqueline Mayes, Lieutenant Cain, Officer Crockett, Lieutenant Smith, Sergeant Walton, Assistant Warden Buss, Major Wardlow, and Dr. Chico to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(8) ORDERS Warden Ron Neal to provide on or before **June 4, 2024**, the names of the individuals who served as Indiana State Prison's Safety Hazard Manager and Supervisor of Fire Training as of January 2023, or to file a notice by the above date explaining why the names of these individuals cannot be provided.

SO ORDERED.

ENTERED: April 2, 2024.

    /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT